# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Clarence Gamble, | Case No.: 2:15-cv-00619-JAD-VCF |
| Plaintiff | **Order (1) Granting Motion for Additional Discovery and (2) Denying Motion for Summary Judgment** |
| v. | |
| Southern Desert Correctional Center, et al., | [ECF No. 63] |
| Defendants | |

Counseled Nevada state-prison inmate Clarence Gamble brings this civil-rights complaint under 42 U.S.C. § 1983 seeking monetary damages for events that allegedly occurred while he was in custody at the Southern Desert Correctional Center.[1] In screening Gamble's second-amended complaint, I permitted his medical-needs claim to proceed against several employees of the Nevada Department of Corrections (NDOC): Drs. Leaks, Romeo Aranas, and Francisco Sanchez; nurses Stacy, Tracy, R. Weiler, and Ben Guitierrez; and administrators Brian Williams and Frank Dreesen.[2] Gamble contends that these defendants delayed providing him medical care and the delay caused him to lose vision in his left eye. Gamble also claims to have difficulty hearing and learning disabilities that directly affect "his ability to articulate and express his thoughts or identify his needs to other people."[3]

Williams, Dressen, Aranas, and Guitierrez[4] move for summary judgment, arguing that Gamble failed to exhaust his administrative remedies, the evidence shows that his medical

---

[1] ECF No. 32 (second-amended complaint).

[2] ECF No. 31 at 4–6.

[3] ECF No. 32 at 10.

[4] The movants are the only active defendants in this case. The Attorney General for the State of Nevada accepted service and responded on behalf of each of them and provided sealed notice of Sanchez's last known address. ECF Nos. 34–36. But Gamble has not taken the necessary steps

treatment was neither delayed nor denied, and defendants are entitled to qualified immunity.[5]
Gamble responds, among other things, by moving under FRCP 56(d) to conduct additional discovery and delay decision on defendants' summary-judgment motion. For the reasons discussed below, I grant Gamble's request for additional discovery and deny defendants' summary-judgment motion without prejudice to their ability to refile it after this additional discovery period.

**Legal Standard**

**A.    The PLRA mandates exhaustion of available administrative remedies.**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[6] The PLRA's exhaustion requirement is not "left to the discretion of the district court, but is mandatory."[7] The Supreme Court has interpreted the PLRA as "requir[ing] proper exhaustion[,]" which "demands compliance with an agency's deadlines and other critical procedural rules . . . ."[8]

"The only limit to [the PLRA's] mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"[9] Available means "'capable of

---

to serve Sanchez or nurses Stacy, Tracy, and R. Weiler. *See* ECF No. 31 at 7 (instructing Gamble on how to proceed against those defendants for whom the Attorney General does not accept service). And Gamble's claim against Dr. Leaks was dismissed without prejudice under FRCP 4(m) for failure to serve process. ECF No. 43.

[5] ECF No. 63.
[6] 42 U.S.C. § 1997e(a) (comma omitted).
[7] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).
[8] *Id.* at 91, 93.
[9] *Ross v. Blake*, ___ U.S. ___, ___, 136 S. Ct. 1850, 1862 (2016).

2

use' to obtain 'some relief for the action complained of.'"[10] Although not comprehensive, the Supreme Court noted in *Ross v. Blake* that there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."[11] First, "an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."[12] Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."[13] Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[14] The Ninth Circuit has similarly held that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA."[15] If the facts on the ground are consistent with one of these scenarios, then "§ 1997e(a) poses no bar."[16]

**B.    A summary-judgment motion is the proper procedural device to resolve PLRA-exhaustion questions.**

"Failure to exhaust under the PLRA is 'an affirmative defense [that] the defendant must plead and prove.'"[17] The Ninth Circuit instructed in *Albino v. Baca* that a summary-judgment

---

[10] *Id.* at 1859 (quoting *Booth v. C.O. Churner*, 532 U.S. 731, 738 (2001)).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 1860.

[15] *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017).

[16] *Ross*, 136 S. Ct. at 1860.

[17] *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)).

3

motion is the proper procedural device to resolve PLRA-exhaustion questions.[18] Under that standard, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."[19] If the defendant carries its burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."[20] "However, . . . the ultimate burden of proof remains with the defendant."[21]

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."[22] But "[i]f a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue."[23]

### Discussion

To show that administrative remedies were available to Gamble, defendants provide a copy of a document entitled "Nevada Department of Corrections Administrative Regulation 740 Inmate Grievance Procedure" with an effective date of February 12, 2010 (AR 740).[24]

---

[18] *Id.* at 1168–71 (adopting the "use of a motion for summary judgment, as opposed to an unenumerated Rule 12(b) motion, to decide exhaustion" and explaining that either party "may move for summary judgment on the exhaustion question, followed, if necessary, by a decision by the court on disputed questions of material fact relevant to exhaustion").

[19] *Id.* at 1172.

[20] *Id.*

[21] *Id.*

[22] *Albino*, 747 F.3d at 1166.

[23] *Id.* at 1170–71.

[24] ECF No. 63-11.

4

Defendants explain that, under this regulation, an inmate must file a grievance within six months if the claim concerns personal property or civil rights. There are three levels of grievances: informal, first, and second. Inmates who are dissatisfied with a decision may appeal by filing a higher-level grievance. The grievance process isn't exhausted "until a decision on the merits is rendered on a second level grievance."[25] The remedies that are available for grievances under the regulation include, but are not limited to "[a]ppropriate measures to address the violation of an inmate's constitutional, civil[,] or statutory rights"[26] and "[a]ppropriate monetary reimbursement for property loss, damage, personal injury, tort, or civil[-]rights claims arising out of an act or omission of the [NDOC] or any of its agents, former officers, employees[,] or contractors."[27] Defendants don't explain how this information is conveyed to the inmates, but Gamble doesn't truly dispute that these remedies were generally available, and the record contains ample evidence that Gamble navigated the grievance process as outlined in the regulation.

Gamble argues that it is unclear if this version of the regulation is the only one that applies because another version went into effect on September 16, 2014; the prison had other regulations like SDCC Operational Procedure 740 and AR 245; and Gamble's evidence shows that his grievances for this medial issue "began in 2012 and extended past 2014."[28] Although Gamble's evidence doesn't show that his grievances "extended past 2014[,]" it does show that

---

[25] ECF No. 63 at 10.
[26] ECF 63-11 at 8, AR 740.08(2)(B).
[27] *Id.* at 9, AR 740.08(2)(F).
[28] ECF No. 71 at 11.

the grievance coordinator rejected one of his grievances at the second level on July 21, 2014,[29] and again on October 16, 2014.[30] Defendants don't dispute that a new version of the regulation went into effect on September 16, 2014. The NDOC's custodian of records testified that "[t]he NDOC publishes current versions of the administrative regulations on its website at www.doc.nv.gov."[31] The current version posted on the NDOC's website states that it "Supersedes: AR 740 (2/12/10); and AR 740 (Temporary, 06/16/14); 9/16/14; (Temporary, 01/03/17); 08/30/17." So, it appears that three versions of the regulation might be relevant here.

To show that Gamble failed to exhaust his available remedies, defendants provide the declaration of the NDOC's custodian of records, who testifies that he reviewed Gamble's grievance file and found that only two of his grievances concern his left-eye medical needs: Grievance ID #20062951186 and Grievance ID #20062968174.[32] The custodian contends that true and correct copies of these grievances are attached to the motion.[33] Relying on these documents, defendants argue that Gamble failed to exhaust his administrative remedies because he never filed a second-level appeal for either grievance despite receiving denials on the merits at both the informal and first levels of the grievance process.[34]

---

[29] ECF No. 73-1 at 2 (rejecting Grievance ID #20062968174 for failing to include all documents pertaining to the grievance, like the lower-level grievances and supporting documents).

[30] ECF No. 73-1 at 29 (rejecting Grievance ID #20062986947 with instruction to "resubmit grievance # 20062968174 on a Second Level Grievance form, DOC-3094").

[31] ECF No. 63-12 at 3, ¶ 5.

[32] ECF No. 63-12 at 4, ¶¶ 14–18.

[33] *Id.* at ¶¶ 15–16.

[34] ECF No. 63 at 6, 7. Defendants also argue that Gamble admits in his operative pleading that he didn't exhaust his administrative remedies. ECF No. 63 at 10. Defendants are referring to Gamble's answers to questions contained in the "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" form that Gamble appropriately used for his second-amended complaint. ECF No. 32 at 12. Gamble checked "No" in response to the question of whether he had exhausted his administrative remedies and explained that he hadn't because defendants "kept rejecting the

Gamble responds that this is "nonsense"; he filed second-level appeals for both grievances, and they were denied on their merits on July 21, 2014, and again on July 25, 2014.[35] Gamble provides two documents to support his argument. The first document is a memorandum from the grievance coordinator rejecting Grievance ID #20062968174 at the second-level for failing to attach all documents pertaining to the grievance, like the informal-level grievance and supporting documents.[36] The second document is a second-level grievance form—possibly the one referenced in Gamble's first document—requesting a review of Grievance ID #20062968174. This document contains Gamble's reasons that he disagrees with the first-level response and signatures by the grievance coordinator in two places dated July 25, 2012.[37] This document states at the bottom that "this ends the formal grievance process[,]"[38] but that is part of the pre-printed form; the space for the second-level response is blank and so, too, are the spaces for whether the grievance was upheld, denied, or not grievable. The signature, title, and date block for the second-level response are also blank.

Neither of Gamble's documents shows that either of his grievances was *denied* on its merits at the second level. However, these documents do refute defendants' argument that Gamble never filed a second-level grievance. Another document that Gamble provides similarly

---

grievances." *Id.* Gamble further explained that defendants "kept rejecting" his grievances and "refused to answer any of them to the point of exhaustion." *Id.* I construe these answers as allegations that the administrative remedies were effectively unavailable to Gamble, not that his claim is barred under the PLRA.

[35] ECF No. 71 at 10.

[36] ECF No. 73-1 at 2 (this appears to be an "Improper Grievance Memorandum" contemplated in the regulations).

[37] *Id.* at 73-1 at 3.

[38] *Id.* (emphasis omitted).

contravenes that claim.[39] Gamble makes a cursory stab at using these documents to show that the administrative remedies were effectively unavailable to him because his grievances were improperly screened or because his claimed disabilities made navigating the process impossible, but neither argument is fully developed.[40]

In sum, defendants provide one version of AR 740, but they haven't demonstrated that version of the regulation is the only one that applies. Nor have they proven that there are no relevant differences between the different versions of this regulation. And Gamble's evidence refutes defendants' argument that Gamble didn't properly exhaust his administrative remedies because he never filed second-level appeals for any of his relevant grievances. Ordinarily, these failures would be fatal to defendants' summary-judgment motion as to exhaustion, but Gamble moves to conduct additional discovery under FRCP 56(d).[41] I grant him that relief for three reasons: (1) Gamble's pro bono attorney was appointed after discovery closed,[42] (2) I am sympathetic to the fact that Gamble's claimed disabilities complicate attorney-client communications, and (3) gaps that I've identified in the record and briefing show that the parties have not fully vetted the question of exhaustion, which the Ninth Circuit instructs "should be decided, if feasible, before reaching the merits of a prisoner's claim."[43]

---

[39] *See* ECF No. 73-1 at 29 (memorandum from the grievance coordinator about Grievance ID #20062986947 and instructing "grievance not accepted" and "[y]ou must resubmit grievance #20062968174 on a Second Level Grievance form, DOC-3094" (emphasis omitted)). It can reasonably be inferred from this document—especially the two different Grievance IDs referenced—that Gamble filed a new grievance complaining about the first-level response denying Grievance ID #20062968174 instead of a second-level grievance.

[40] ECF No. 71 at 3, 10–11.

[41] *Id.* at 12.

[42] *Compare* ECF No. 58 at 2, *with* ECF No. 69.

[43] *Albino*, 747 F.3d at 1170.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Gamble's motion for discovery under FRCP 56(d) is **GRANTED** and defendants' motion for summary judgment **[ECF No. 63] is DENIED without prejudice** to defendants' ability to refile it after the close of discovery. The time to complete discovery is REOPENED and EXTENDED to June 21, 2019, and dispositive motions must be filed no later than July 22, 2019.

Dated: March 21, 2019

_____
U.S. District Judge Jennifer A. Dorsey