UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Estate of Clarence Gamble,<br><br>   Plaintiff<br><br>v.<br><br>Frank Dreesen, et al.,<br><br>   Defendants | Case No.: 2:15-cv-00619-JAD-VCF<br><br>**Order Granting Motion for Summary Judgment and Directing Plaintiff to Show Cause Why Remainder of Case Should Not Be Dismissed Under FRCP 4(m)**<br><br>[ECF No. 114] |

Clarence Gamble filed this civil-rights action against the Southern Desert Correctional Center and various prison doctors, nurses, and officials, alleging that were deliberately indifferent to his serious medical needs because they delayed his access to necessary cataract surgery and thus caused permanent blindness in his left eye.  Gamble has since passed away, and his estate was substituted as the plaintiff in this case.[1]  Defendants Frank Dreesen, Brian Williams, Romero Aranas, and Benedicto Gutierrez move for summary judgment on Gamble's lone deliberate-indifference claim, arguing that he failed to exhaust his administrative remedies; a subset of defendants didn't personally participate in his medical care or are entitled to qualified immunity; and regardless, the record does not support his claim.  I find that at least one of Gamble's grievances was exhausted and thus that his claims aren't barred by the Prison Litigation Reform Act.  But because the record does not support Gamble's deliberate-indifference claim, I grant summary judgment in the moving defendants' favor and give the estate until August 8, 2022, to show cause why this claim should not be dismissed against the remaining defendants for failure to serve them.

---

[1] The plaintiff's interests have been represented by pro bono counsel since 2018.  ECF No. 69.

**Discussion**

## I. Defendants' exhaustion defense fails.

### A. Exhaustion standard

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available remedies before filing "any suit challenging prison conditions."[2] Failure to properly exhaust all available remedies as the PLRA requires is "an affirmative defense [that] the defendant must plead and prove."[3] Once a defendant proves that there was an available administrative remedy that the inmate didn't exhaust, "the burden shifts to the prison to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."[4] Nonetheless, the ultimate burden of proof remains with the defendant.[5] The question of exhaustion is typically disposed of on summary judgment, with the judge deciding disputed factual issues relevant to exhaustion.[6] If feasible, exhaustion should be decided before reaching the merits of a prisoner's claims.[7]

In *Woodford v. Ngo*, the United States Supreme Court held that the PLRA's exhaustion requirement requires *proper* exhaustion.[8] Proper exhaustion means that the inmate must comply with the prison's "deadlines and other critical procedural rules" and correctly use "all steps that the [prison] holds out," so that the prison is given an opportunity to address the issues on the

---

[2] 42 U.S.C. § 1997e(a).
[3] *Jones v. Bock*, 549 U.S. 199, 204 (2007).
[4] *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).
[5] *Id.*
[6] *Id.* at 1170–71.
[7] *Id.* at 1170.
[8] *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added).

merits.[9]  And in *Ross v. Blake*, the Supreme Court reiterated that the PLRA's proper exhaustion requirement is mandatory: exhaustion is only excused if administrative procedures are not available.[10]

### B. Gamble's grievances

The defendants present two of Gamble's grievances related to his left eye and argue that he failed to exhaust his administrative procedures related to them.[11]  The first of the two (grievance # 1186) was filed on October 18, 2012.  In it, Gamble noted that he had been examined by an outside specialist for his eye and that the specialist recommended surgery.[12]  Gamble asked "to sign disclosures to have the cataract remove[d]" and argued that failure to schedule the surgery violated his Eighth and Fourteenth Amendment rights.[13]  Nurse Benedicto Gutierrez denied the grievance, explaining that emergency surgery was not recommended by the specialist and that the Utilization Review Panel (URP)—the prison committee that reviews and approves medical care for inmates—had denied Gamble's surgery request, choosing to monitor his condition and reevaluate six months later.[14]  Gamble filed a first-level appeal.[15]  That appeal

---

[9] *Id.* at 90–91 (internal citation and quotation omitted).

[10] *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) (holding that a court may not excuse an inmate's failure to exhaust administrative remedies before suing under the PLRA, even to take "special" circumstances into account).

[11] ECF No. 115 at 8–10. Defendants filed a corrected version of their summary-judgment motion. See ECF No. 114 (initial summary-judgment motion); ECF No. 115 (corrected motion). I cite to the corrected version throughout this order.

[12] ECF No. 63-7 at 4–5 (grievance ID #20062951186).  Defendants do not attach the grievances to their renewed summary-judgment motion, instead citing to the documents they attached to a previous motion.  For future proceedings, defense counsel is advised to attach all relevant documents to the motion pending before the court, as the local rules require.

[13] *Id.*

[14] *Id.* at 2.

[15] *Id.* at 8–9.

was marked "denied," but the response stated that Gamble's "cataract surgery has been approved and scheduled."[16]  The response also noted that Gamble would not be informed of the surgery's date for security reasons.[17]  Gamble didn't appeal that response.

Ten months later, Gamble filed informal grievance # 8174, this time alleging deliberate indifference due to the delay in scheduling his surgery—he claimed that the procedure was scheduled for November 1, 2012, but it didn't occur until February 25, 2013.[18]  He alleged that the delay left him with permanent blindness, and he requested $2 million in damages.[19]  That grievance was rejected on procedural grounds because Gamble failed to include the necessary form to request monetary restitution.[20]  So Gamble submitted an amended informal grievance, which was also rejected because he failed to identify the Nevada Department of Corrections staff allegedly responsible for his injuries.[21]  Gamble again refiled, and Nurse Gutierrez denied his grievance, finding that he had received the "surgery and required follow[-]up as requested by the specialist."[22]  Gamble submitted a first-level appeal, and the responder denied it, noting that she didn't know why his surgery was delayed, but that he "received the necessary medical care for [his] condition" and received "all recommended surgeries" and follow-up appointments.[23]

Gamble attempted to file a second-level appeal, but it was rejected because he failed to attach supporting documentation and the lower-level grievances.  He was instructed to re-submit

---

[16] *Id.* at 6.
[17] *Id.*
[18] ECF No. 63-8 at 12.
[19] *Id.*
[20] *Id.*
[21] *Id.* at 3–6.
[22] *Id.* at 2.
[23] *Id.* at 27–28.

the grievance and warned that "failure to re-submit the grievance within the prescribed timeframe [will] constitute abandonment."[24] Fifty-seven days later, Gamble filed a grievance on an informal-grievance form but claimed that it was a second-level appeal of grievance # 8174.[25] That grievance was again rejected because it wasn't filed on the right form.[26] Gamble failed to resubmit the grievance after that.

### C. Gamble exhausted available remedies for grievance #1186.

Defendants contend that, because Gamble did not reach the end of the process for either eye-related grievance, he did not properly exhaust his available administrative remedies. This is true for grievance # 8174. Gamble was repeatedly instructed to correct errors he made in his second level appeals. He did not correct them. Gamble has not shown that the prison's insistence on following the requirements to properly pursue appeals made the process "unavailable" to him. Indeed, he was told at every step how to file a proper second-level appeal and was warned that failure to follow those instructions would result in the abandonment of this grievance. So I find that Gamble didn't exhaust his remedies related to grievance # 8174.

The path to an exhaustion answer on grievance #1186, however, is murkier. In that grievance, Gamble asked the prison to schedule his cataract surgery. During the first-level appeal, prison officials puzzlingly "denied" that request, while appearing to grant him the relief he sought. At that point, Gamble had nothing to appeal—no other remedy was "available" to him concerning his grievance because prison officials told him he would receive the surgery he

---

[24] ECF No. 73-1 at 2. If a grievance is rejected, prisoners have, at most, five days from the date they received the rejection letter to re-submit a corrected grievance. ECF No. 115-3 at 10 (Administrative Regulation 740.09(4)).

[25] *Id.* at 32.

[26] *Id.* at 29.

requested.[27] He did not and could not have known that the surgery would be delayed, given that the prison explicitly told him that he wasn't permitted to know when the surgery would take place. So I find that Gamble exhausted his available remedies as to grievance # 1186.

## II. Gamble's medical deliberate-indifference claim

### A. Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[28] When considering a summary-judgment motion, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[29] When the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[30] The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[31]

---

[27] *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (noting that "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available"); *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010) ("An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised.").

[28] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[29] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[30] *Celotex*, 477 U.S. at 323.

[31] *Id.* at 322.

### B. The established record related to the treatment of Gamble's left-eye conditions.

On September 17, 2012, Gamble complained of blurred vision.[32] The next day, he was evaluated by a specialist at the Westfield Nevada Eye and Ear Center (Westfield) and diagnosed with a mature cataract in his left eye.[33] The specialist discussed options with Gamble, "including observation versus cataract surgery," and indicated that Gamble requested surgery.[34] On October 5, 2012, Gamble saw another doctor for his eye, who noted his cataract diagnosis but did not recommend any action.[35] On October 16, the URP denied Gamble's surgery request and noted that it would be reevaluated in six months.[36] But Gamble had an additional ophthalmology appointment in late October, and after that appointment, his cataract surgery was approved and scheduled for February 25, 2013.[37]

Between October 2012 and February 2013, Gamble was seen by medical professionals for issues with his left eye several times. In December, Southern Desert Correctional Center (SDCC) medical staff diagnosed him with and treated him for conjunctivitis.[38] But the treatment

---

[32] ECF No. 65 at 58 (sealed medical records). The plaintiff contends that Gamble complained of blurred vision and eye pain as early as August 17, 2012. ECF No. 116 at 3. It points to Gamble's grievance filed on January 8, 2014, in which he states that he experienced blurriness in his left eye on August 17, 2012. ECF No. 116-4 at 7. But this months-later, hearsay statement does not genuinely dispute the evidence presented by the defendants showing that Gamble didn't complain of any eye issues until September.

[33] ECF No. 65 at 59.

[34] *Id.*

[35] *Id.* at 61.

[36] ECF No. 114-2 at 2.

[37] *Id.* at 3.

[38] ECF No. 65 at 44–45.

7

wasn't effective, so Gamble had an urgent visit with Westfield on December 12, 2012.[39] There, the specialist diagnosed Gamble with glaucoma and prescribed medication to treat the condition.[40] The next day, the specialist recommended a follow-up appointment to determine if Gamble's eye would be stable enough to undergo his scheduled cataract surgery.[41] Gamble attended that follow-up appointment on January 17, 2013.[42] The specialist recommended a combined cataract surgery and trabeculectomy in Gamble's left eye.[43] A week later, Gamble received a refill of his eye medications.[44] His cataract surgery was performed on February 25, 2013.[45] Gamble was evaluated by SDCC medical staff the day after his surgery and was consistently monitored through April 2013.[46] Gamble also attended multiple follow-up appointments at Westfield.[47]

### C. Defendants are entitled to summary judgment on Gamble's deliberate-indifference claim.

A prisoner who claims inadequate medical care must show that prison officials were deliberately indifferent to his serious medical needs.[48] A plaintiff can prevail on a deliberate-

---

[39] *Id.* at 66.

[40] *Id.* at 68.

[41] *Id.* at 71. Defendant Romeo Aranas explained in his deposition that "you cannot do a cataract surgery if you have glaucoma" and that the Westfield specialist thus had to treat Gamble's glaucoma before performing cataract surgery. ECF No. 116-6 at 6.

[42] ECF No. 65 at 73.

[43] *Id.*

[44] *Id.* at 41.

[45] *Id.* at 78–79, 101.

[46] *Id.* at 31–39.

[47] *Id.* at 101, 106, 113, 118, 123.

[48] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

indifference claim if he can show that prison officials denied, delayed, or intentionally interfered with medical treatment and that the delay or interference caused further injury.[49] Indifference to a prisoner's medical needs must be substantial; mere indifference, negligence, medical malpractice, or even gross negligence are insufficient to establish deliberate indifference.[50] A mere difference of medical opinion likewise does not suffice;[51] a prisoner must instead show that the course of treatment chosen was medically unacceptable under the circumstances and taken in conscious disregard to his health.[52]

Gamble presents no evidence to contradict the medical records that defendants produce showing continuous and timely care for his left eye. He does not establish that the URP's initial denial of his surgery request was deliberately indifferent—indeed, the medical records show that Westfield initially recommended either monitoring or surgery: the URP did not act against medical advice when it first chose the monitoring option.[53] And when confronted with a second opinion in which a doctor explicitly recommended cataract surgery, the URP approved it. Gamble presents no evidence that the initial delay in approving his surgery went against medical advice or was delayed because of a conscious disregard for Gamble's health.

Nor does Gamble establish that the five-month delay in receiving cataract surgery was medically inappropriate under the circumstances. In the time between Gamble's first complaints of blurred vision and his surgery, he was seen by SDCC staff and outside specialists for various

---

[49] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

[50] *Conn v. City of Reno*, 591 F.3d 1081–82 (9th Cir. 2009).

[51] *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

[52] *See Toguchi v. Chung*, 291 F.3d 1051, 1058 (9th Cir. 2004).

[53] *See* ECF No. 65 at 59.

eye ailments that needed to be addressed before he was able to receive cataract surgery.[54]  As Dr. Aranas testified in his deposition, "you cannot do a cataract surgery if you have glaucoma" and that the Westfield specialist thus had to treat Gamble's glaucoma before performing cataract surgery.[55]  The plaintiff also does not show that the five-month delay in cataract surgery was responsible for Gamble's further loss of vision after the surgery was completed.  Indeed, the estate attaches to its response testimony from Dr. Romero Aranas, who testified at deposition that cataracts typically don't cause blindness and that Gamble had many other illnesses—like diabetes and glaucoma—that could have led to complications with his eyesight.[56]

        The estate cites to the deposition testimony of Dr. Aranas, Nurse Gutierrez, and SDCC Warden Brian Williams in an attempt to contend that the facility was aware of Gamble's condition but was acting under a "one[-]eye only" policy, thus denying him surgery because he could see out of his right eye.[57]  But none of that testimony indicates that the prison had such a policy or that Gamble was denied surgery under it.  The medical records instead demonstrate that he was initially denied surgery because the specialist didn't indicate that it was necessary at that time; but once surgery was recommended, it was approved.  The estate's reliance on *Colwell v. Bannister*, in which the Ninth Circuit held that a prisoner was denied cataract surgery despite opposing specialist recommendations because he could still see out of his other eye, is misplaced.[58]  Unlike the defendants in *Colwell*, there is no evidence to suggest that these

---

[54] *See* ECF No. 65 at 44–77.

[55] ECF No. 116-6 at 6.

[56] *See* ECF No. 116-6 at 6 (Aranas's testimony noting that cataracts usually don't cause blindness, but glaucoma and macular degeneration can) and 9 (noting that Gamble's diabetes diagnosis was another complication that could cause blindness).

[57] ECF No. 116 at 3–4, 9–13.

[58] *Colwell v. Bannister*, 763 F.3d 1060, 1069 (9th Cir. 2014).

defendants acted against specialist advice or denied Gamble care based on any so-called "one[-]eye only" policy.

The defendants have met their burden to show that no evidence supports a finding of unconstitutional delay in medical treatment, and the estate has not demonstrated otherwise. So I grant the motion for summary judgment on this lone claim in favor of moving defendants.[59]

### III. The remaining unserved defendants will be dismissed.

Gamble named four additional defendants who were never served in this action: Francisco Sanchez, R. Weiler, Tracey, and Stacy. In 2016, the Attorney General filed a notice that it would not accept service for those defendants, stating that the prison does not have record of employees by the names Tracey, Stacy, or Weiler, and declining to accept service for Francisco Sanchez.[60] The plaintiff did not find or serve those individuals throughout this seven-year-long litigation. Federal Rule of Civil Procedure 4(m) permits a court to dismiss claims against an unserved defendant after giving notice to the plaintiff.[61] So I hereby give notice to the estate that I will dismiss the claims against unserved defendants Sanchez, Weiler, Tracey, and Stacy unless it shows cause in writing by August 8, 2022, why the claims against these unserved defendants should not be dismissed.

---

[59] Because I find no evidence to support a medical-indifference claim, I do not reach defendants' personal-participation and qualified-immunity arguments.

[60] ECF No. 34.

[61] Fed. R. Civ. P. 4(m).

**Conclusion**

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment **[ECF No. 114] is GRANTED**. And with good cause appearing and no just cause for delay, I direct the Clerk of Court under FRCP 54(b) to **ENTER PARTIAL FINAL JUDGMENT** for Defendants Dreesen, Williams, Aranas, and Gutierrez and against Gamble, resolving all claims between these parties and leaving only the estate's claim against unserved defendants.

**IT IS FURTHER ORDERED** that **Gamble has until August 8, 2022, to show cause why the claims against remaining and unserved defendants Sanchez, Tracey, Stacy, and Weiler should not be dismissed under FRCP 4(m)**. Failure to do so will result in these claims being dismissed and this case being closed.

_____
U.S. District Judge Jennifer A. Dorsey
July 29, 2022